Steven W. Ritcheson, Esq. (SBN 174062)
**INSIGHT, PLC**
578 Washington Blvd. #503
Marina del Rey, California 90292
Telephone: (424) 289-9191
Facsimile: (818) 337-0383
*swritcheson@insightplc.com*

**Attorney for Plaintiff
Mod Stack LLC**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MOD STACK LLC,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br><br>**VIRTUALPBX.COM, INC.,**<br><br>    **Defendant.** | Case No. _____<br><br>**Jury Trial Demanded**<br><br>**COMPLAINT<br>FOR PATENT INFRINGEMENT** |

## COMPLAINT FOR INFRINGEMENT OF PATENT

Now comes, Plaintiff Mod Stack LLC ("Plaintiff" or "Mod Stack"), by and through undersigned counsel, and respectfully alleges, states, and prays as follows:

## NATURE OF THE ACTION

1.  This is an action for patent infringement under the Patent Laws of the United States, Title 35 United States Code ("U.S.C.") to prevent and enjoin Defendant VirtualPBX.com, Inc. (hereinafter, "Defendant"), from infringing and profiting, in an illegal and unauthorized manner, and without authorization and/or consent from Plaintiff from U.S. Patent No. 7,460,520 (hereinafter, the "'520 Patent") (hereinafter, the "Patent-in-Suit"), which is attached hereto as **Exhibit A**, and is incorporated herein by reference, and pursuant to 35 U.S.C. §271, and to recover damages, attorney's fees, and costs.

**THE PARTIES**

2. Plaintiff Mod Stack LLC ("Mod Stack" or "Plaintiff") is a Texas limited liability company with its principal place of business at 2150 S. Central Expy, McKinney, Texas 75070.

3. Upon information and belief, Defendant is a corporation organized under the laws of California, having a principal place of business at 1275 Lincoln Ave, Suite 7, San Jose, CA 95125. Upon information and belief, Defendant may be served with process c/o: Paul David Hammond at 1275 Lincoln Ave, Suite 7, San Jose, CA 95125.

4. Plaintiff is further informed and believes, and on that basis alleges, that Defendant operates the website, www.virtualpbx.com. Upon information and belief, Defendant derives a portion of its revenue from sales and distribution via transactions initiated from its Internet website located at www.virtualpbx.com, and its incorporated and/or related systems (collectively the "VirtualPBX Website"). Also, upon information and belief, Defendant operates an office location in this district. Plaintiff is informed and believes, and on that basis alleges, that, at all times relevant hereto, Defendant has done and continues to do business in this judicial district, including, but not limited to, providing products/services to customers located in this judicial district by way of the VirtualPBX Website.

**JURISDICTION AND VENUE**

5. This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§1 *et seq*.

6. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a).

7. This Court has personal jurisdiction over Defendant by virtue of its systematic and continuous contacts with this jurisdiction and its residence in this District, as well as because of the injury to Plaintiff, and the cause of action Plaintiff has risen in this District, as alleged herein.

8. Defendant is subject to this Court's specific and general personal jurisdiction pursuant to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of

conduct, and/or deriving substantial revenue from goods and services provided to individuals in the forum state and in this judicial District; and (iii) being incorporated in this District.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. §1400(b) because Defendant resides in this District under the Supreme Court's opinion in *TC Heartland v. Kraft Foods Group Brands LLC,* 137 S. Ct. 1514 (2017) through its incorporation, and regular and established place of business in this District.

10. For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b).

## COUNT I:

## INFRINGEMENT OF THE '520 PATENT

11. Plaintiff incorporates the above paragraphs herein by reference.

12. On December 2, 2008, United States Patent No. 7,460,520 ("the '520 Patent") was duly and legally issued by the United States Patent and Trademark Office. The '520 Patent is titled "Apparatus and Method for Using Multiple Call Controllers of Voice-Band Calls." The '520 patent issued from Application No. 10/463,964 filed on June 18, 2003 and is related to Provisional Application No. 60/427,804 filed on November 20, 2002. A true and correct copy of the '520 Patent is attached hereto as Exhibit A and incorporated herein by reference.

13. Mod Stack is the assignee of all right, title and interest in the '520 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '520 Patent. Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the '520 Patent by Defendant.

14. The invention of the '520 Patent is generally directed to systems for supporting multiple central controllers of voice-band calls. In the past, circuit-switched networks were used to carry voice traffic from one subscriber to another, while separate packet-switched networks were used to carry data traffic. Two networks were used because the existing protocols and technology available for packet networks did not provide certain characteristics necessary for voice-band calls, such as low latency and deterministic quality of service. Improvements in packet network protocols

and technology which address these deficiencies allow a new kind of packet network, sometimes called a "converged network," to carry both voice and data traffic.

15. The equipment that interfaces a converged packet network with a circuit-switched network is referred to as a "voice gateway." (Ex. A at Col. 1:31-33). The term "voice gateway" is a defined term for a person skilled in the art for a particular type of apparatus. A voice gateway offers a gateway for voice over IP (VoIP) calls to, and from, traditional analog or digital Public Switched Telephone Network ("PSTN") or private branch exchange ("PBX") calls. (Id.).

16. The voice gateway interfaces with one or more call controllers on its trunk side, and with one or more integrated access devices ("IADs") on its subscriber side. The IAD provides a link to the packet network and to the voice gateway for multiple subscribers. The call controller directs the voice gateway to make voice connections. In a circuit-switched network, call control is performed by a telephony switch. In a convergence packet-network, call control is performed by a "softswitch." Several different call control protocols are in use by different switches.

17. Migrating from the circuit-switched network to the converged network is an evolutionary process, so that for some period of time many customers will be reachable only through a circuit-switched network. Yet all customers expect the ability to call from one telephone to any other telephone, regardless of what type of network the originating and terminating telephones are located on. Converged networks therefore need to interface with circuit-switched networks as well as other converged networks. In view of this, the inventors of the '520 Patent recognized the need for an unconventional voice gateway which can support multiple call control protocols and interface with different types of telephony switches and different types of softswitches, simultaneously. The inventors therefore invented the apparatuses and methods disclosed in the claims of the '520 Patent.

18. The '520 Patent provides several examples of voice gateways for voice-band calls between telephony devices on different networks. (E.g., Ex. A at Col. 3:31 – Col. 6:38; Figs. 1- 4). The examples illustrate how voice-band calls are connected by a voice gateway through the packet and/or circuit-switched network in which a voice-band call is connected by a different type of call controller (e.g., an IAD for a packet-switched network and a Class 5 switch for a circuit-switched

network (PSTN)). (Ex. A at Col. 6:24-27). For example, Figure 1 is a block diagram illustrating voice gateway (101) handling a voice-band call between a telephony device (102a) and another telephony device (not shown) on a Public Switched Telephone Network ("PSTN") using a Class 5 switch (103) as a call controller. This diagram shows a voice-band path established between telephony device (102a) and Class 5 switch (103) to a telephony device in the PSTN (108). (Ex. A at Fig. 1). Telephony device (102a) communicates with voice gateway (101) over Local Packet Network ("LPN") (104), with Integrated Access Device ("IAD") (105) converting analog voice signals to voice packets, and vice-versa. (Id. at Col. 3:42-46). The Class 5 switch (103) is the master in the master-slave model for call control and the voice gateway (101) is the slave which controls telephone device (102a) under direction of the Class 5 switch. (Id. at Col. 3:47- 50). In this example, the Class 5 switch (103) sends a GR-303 call control message directing the voice gateway (101) to connect trunk 1 (T1 in voice gateway (101)) to line 2 (L2 in voice gateway (101)). (Id. at col. 3:66-col. 4:2). Voice gateway (101) also converts the GR-303 call control messages into signaling message which are communicated to IAD (105) over logical in voice gateway (101)) and line 2 (L2 in voice gateway (101)). (Id. at Col. 5:1-2). Voice gateway (101) also converts the MGCP call control message into signaling messages which are communicated to IAD 105 over logical signaling path (111). (Id. at Col. 5:6-8). IAD (105) acts on the signaling messages, as is shown in voice path 112 connecting trunk 2 (T2 in IAD (105) to line 3 (L3 in IAD (105)). (Id. at Col. 5:8-10).

19. Figure 6 of the '520 Patent is an exemplary block diagram of a voice gateway (101a) that is an embodiment of the claimed invention, which supports both packet and TDM/PSTN interfaces. (Ex. A at Fig. 6a). Voice gateway (101A) has a packet network interface (601); a TDM/PSTN interface (602), a call control module (603), and a conversion module (604). (Id. at col 7:64-67). During a voice-band call, voice gateway (101a) operates to cross-connect two voice streams under the direction of a call controller, while also providing any necessary conversion required. (Id. at col. 8:1-4). Voice packets and call control packets enter/exit voice gateway (101a) through packet network interface (601) for transport to/from LPN (104). (Id. at col. 8:10-12). Voice gateway (101a) also has a TDM/PSTN interface (602), which transports timeslots carrying voice

and call control to/from Class 5 switch (103). (Id. at col. 8:12-14). Incoming packets or timeslots which contain call control messages are sent over links (605) and (606) to call control module (603). (Id. at col. 8:14-16). Call control module (603) then: (1) acts on the information; (2) generates a call control message and transmits it to the sender (through either packet network interface (601) or TDM interface (602)); (3) generates a call control message and transmits it to the other side of the connection (through either packet network interface (601) or TDM/PSTN interface (602)); or (4) any combination of these. (Id. at Col. 8:16-22).

20. Figures 9-13 of the '520 Patent provide examples of the interactions within the call control module (603 in Figure 6), which is exemplary of the claimed invention, during various call scenarios involving different types of call controllers, i.e., how it operates with different protocols. For example,

- Figs. 9A and 9B, viewed together, illustrate the interactions within call control module 603 during an outgoing call from the IAD (105) to a Class 5 switch (103A) using V5 as the protocol;
- Figs. 10A and 10B, viewed together, illustrate the interactions within call control module (603) during an outgoing call from the IAD (105) to a Class 5 switch (103a) using GR-303 as the call control protocol;
- Figs. 11A and 11D, viewed together, illustrate the interactions between the call control module (603) during an outgoing call from the IAD 105 to a Class 5 softswitch (201) using MGCP as the call control protocol;
- Figs. 12A and 12B, viewed together, illustrate the interactions between the call control module (603) during an incoming call from a switch (103a) to the IAD (105) using V5 as the call control protocol; and
- Figs. 13A and 13B, viewed together, illustrate the interactions between the call control module (603) during an incoming call from a switch (103a) to the IAD (105) using GR303 as the call control protocol.

(Id. at Col. 11:9 – Col. 18:19).

21. The call control module is a physical device.

22. Figs. 9-13 demonstrate that the software architecture of the call control module (602), which encapsulates protocol-specific details in Protocol Endpoints (701) and Protocol Endpoint (702) (see Figs. 7 and 8), allow many of the object interactions to be similar even though the direction of the call and the type of call controller varies. (Id. at Col. 10:61-66). The object interactions required to establish a bearer connection between the two Protocol Endpoints is similar in each diagram because the two endpoints use an internal message set to establish a connection. (Id. at Col. 10:66 – Col. 11:3).

23. By using the internal messages as described in the claims, the claimed invention improves upon the routine prior art protocol-specific actions that are limited to the interaction between a Protocol Endpoint and its external controller. (Id. at Col. 11:3-5). Using an internal protocol such that the protocol-specific actions are no longer limited to the interaction between a Protocol Endpoint and its external controller, is neither generic, nor conventional, and does not use generic components.

24. The unconventional nature of the claimed invention is also supported by the prosecution history.

25. In the prosecution history, applicant argued that the prior art only used a single link protocol governing communications, which is different than "a first protocol endpoint configured to receive at least one first external call control message of a first protocol… and to map the at least one first external call control message to at least one corresponding first internal call control message of an internal protocol" as required by claim 1. (Ex. B at 19). The prior art did not disclose "mapping to a corresponding internal call control message" because the prior art does not have an internal call control message or protocol. (Id. at 19-20).

26. The prior art discussed during the prosecution history also did not operate on call control messages or mapping call control messages, and instead operated on voice packets. (Id. at 20-21, 22-23)

27. The prior art discussed during the prosecution history also did not disclose that

signaling is mapped to a second internal control message of an internal protocol, much less that "the first protocol endpoint is further configured to receive the at least one second internal call control message and to map the at least one second internal call control message to a third call control message of a first protocol." (Id. at 24-25). Instead, the prior art used conventional narrow band signaling. (Id. at 24). The prior art simply passed data forward, which is different from mapping a second internal call control message to a third external call control message of the first protocol. (Id.).

28. The prior art discussed in the prosecution history also did not disclose a protocol adapter to "route the at least one first internal call control message to the second protocol endpoint." (Id. at 22-23).

29. As explained in the prosecution history, the claimed apparatus is unconventional and uses non-generic components because, at a minimum, it uses an internal call control messages, maps external call control messages to internal call control messages and vice versa, and uses a protocol adaptor to route internal call control messages to endpoints. (Id. at 18-25). The elements of the claimed invention are therefore not simply using prior art elements in a well understood, conventional, or routine way. (Id.).

30. Claim 1 is directed to a type of apparatus called a voice gateway.

31. The apparatus in Claim 1 is an improvement to a voice gateway that connects a local packet network ("LPN") to a circuit-switched network.

32. The apparatus in claim 1 comprises two protocol endpoints (a first protocol endpoint and a second protocol endpoint) and a protocol adapter.

33. The first protocol endpoint in claim 1 is configured to perform at least these specific tasks:

- to receive at least a first call control message of a first protocol from a first call controller associated with a circuit-switched network;
- to map the first external call control message to a corresponding first internal call control message of an internal protocol; and

- to receive a second internal call control message and map it to a third external call control message of the first protocol.

34. The second protocol endpoint in Claim 1 is configured to perform at least these specific tasks:

- to receive at least a second external call control message of a second protocol from an IAD associated with the LPN;
- to map the second external call control message to a corresponding second internal call control message of an internal protocol; and
- to receive the first internal call control message and to map the first internal call control message to a fourth external call control message of the second protocol.

35. The apparatus of Claim 1 has a protocol adapter that is configured to perform at least these specific tasks:

- to receive the first and second internal call control messages;
- to route the first internal call control message to the second protocol endpoint; and
- to route the second internal call control message to the first protocol endpoint.

36. In addition to the protocols and standards described in the patent, there are other protocols and standards of packet protocols that are commonly used to carry voice and are known in the art. (Id. at Col. 7:57-59). A person of ordinary skill in the art would know that the invention as described in the '520 Patent is not dependent on using only the protocols described in the examples in the '520 Patent and would understand that the claimed invention would be applicable to other protocols and standards for call control messages. (Id. at Col. 7:59-63). As explained in the specification, the many examples of using the claimed invention with different protocols demonstrates that a person skilled in the art would be taught to use the claimed invention with any of the call control and voice protocols used to connect a local packet network and a circuit-switched network for voice-band calls. (Id. at Col. 7:57-63, Col. 10:61 – Col. 11:3). This is possible because of the unconventional nature of the claimed invention of using internal call control messages in the

manner described by the claims.

37. The claims are not directed to using a common language to translate between two foreign languages. As explained in the specification, it was already known how to directly connect LPNs with circuit-switched networks without first creating an internal message protocol. (E.g., Ex. A at Col. 1:31-44). There was no need to find a common language to translate between two foreign languages. However, the prior art had flaws because protocol-specific actions were limited to the interaction between a Protocol Endpoint and its external controller. (E.g., id. at Col. 11:3-5). The inventors of the '520 patent discovered that this problem could be solved through the use of internal call control messages in the unconventional way claimed in the '520 Patent. (E.g., id. at Col. 10:59 - 11:3).

38. Upon information and belief, Defendant has been and now is directly infringing at least Claim 1 of the '520 Patent in the State of California, in this District, and elsewhere in the United States, by actions comprising making, using, selling, and/or offering for sale an apparatus (e.g., VirtualPBX Server) for connecting a local packet network (LPN) and a circuit-switched network ("Accused Instrumentality").  A non-limiting and exemplary claim chart comparing the Accused Instrumentality to claim 1 of the '520 Patent is attached hereto as **Exhibit B** and is incorporated herein as if fully rewritten.

39. The Accused Instrumentality utilizes an apparatus (e.g., VirtualPBX Server) connecting a local packet network (LPN) (e.g., a local packet network which is utilized by the accused system) and a circuit-switched network (e.g., PSTN). The Accused Instrumentality provides functionality to blend PSTN users and VoIP users in a conference. A VirtualPBX VoIP communications client could be a PSTN user. (See Ex. B.)

40. The Accused Instrumentality utilizes the apparatus which comprises a first protocol endpoint (e.g., a node which receives PSTN call) configured to receive at least one first external call control message (e.g., PSTN call control message such as "QSIG SETUP") of a first protocol (e.g., a circuit-switched network protocol) from a first call controller associated with the circuit-switched network (e.g., PSTN) and to map the at least one first external call control message (e.g., "PSTN

call control message such as "QSIG SETUP") to at least one corresponding first internal call control message of an internal protocol. (See Ex. B.) Upon information and belief, the accused system comprises a first protocol endpoint (e.g., a node which receives PSTN call) configured to receive at least one first external call control message (e.g., PSTN call control message such as "QSIG SETUP") of a first protocol (e.g., a circuit-switched network protocol) from a first call controller (e.g., a controller which controls PSTN call) associated with the circuit-switched network (e.g., PSTN) and to map the at least one first external call control message (e.g., "PSTN call control message such as "QSIG SETUP") to at least one corresponding first internal call control message of an internal protocol. (See Ex. B.)

41.   The Accused Instrumentality utilizes the apparatus which comprises a second protocol endpoint (e.g., a node which receives a VoIP call control message from packet-switched network) configured to receive at least one second external call control message of a second protocol from an integrated access device (IAD) associated with the LPN (e.g., the local network at the enterprise) and to map the at least one second external call control message (e.g., a VoIP call control message such as "1-180 RINGING") to at least one corresponding second internal call control message of an internal protocol.  (See Ex. B.)

42.   The Accused Instrumentality utilizes the apparatus which comprises a protocol adapter configured to receive the first and the second internal call control messages and to route the at least one first internal call control message to the second protocol endpoint and the at least one second internal call control message to the first protocol endpoint. (See Ex. B.)

43.   The Accused Instrumentality utilizes the apparatus which comprises a first protocol endpoint (e.g., a node which receives PSTN call) such that the first protocol endpoint (e.g., a node which receives PSTN call) is further configured to receive the at least one second internal call control message and to map the at least one second internal call control message to a third external call control message (e.g., a call control message such as "QSIG CONNECT") of the first protocol (e.g., circuit-switched network protocol). (See Ex. B.)

44.   The Accused Instrumentality utilizes the apparatus which comprises a second

protocol such that the second protocol endpoint (e.g., a node which receives a VoIP call control message from packet-switched network) is further configured to receive the at least one first internal call control message and to map the at least one first internal call control message to a fourth external call control message (e.g., a call control message such as "Invite") of the second protocol. (See Ex. B.)

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of any and all causes of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

   a. Judgment that one or more claims of United States Patent No. 7,460,520 have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

   b. Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, and an accounting of all infringements and damages not presented at trial;

   c. That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

   d. That Defendant be permanently enjoined from any further activity or conduct that infringes one or more claims of United States Patent No. 7,460,520; and

   e. That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

12
Complaint for Patent Infringement

1 | Dated: January 7, 2021 | Respectfully submitted,

2 | | */s/ Steven W. Ritcheson*
  | | Steven W. Ritcheson, Esq. (SBN 174062)
3 | | **INSIGHT, PLC**
  | | 578 Washington Blvd. #503
4 | | Marina del Rey, California 90292
  | | Telephone: (424) 289-9191
5 | | Facsimile: (818) 337-0383
  | | *swritcheson@insightplc.com*

6

7 | | **Attorney for Plaintiff**
  | | **Mod Stack LLC**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28